# ORIGINAL



WELLMAN & WARREN LLP
Scott W. Wellman (CA State Bar: 82897)
Mitsuruko Uchida (CA State Bar:213441)
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Telephone: (949) 580-3737
Facsimile: (949) 580-3738

CANE & ASSOCIATES LLP
Kyleen Cane (NV Bar #5900)
3199 East Warm Springs Road, Suite 200
Las Vegas, NV 89120
Telephone: (702) 312-6255
Facsimile: (702) 944-7100

---

## IN AND BEFORE THE UNITED STATES DISTRICT COURT,
## IN AND FOR THE DISTRICT OF NEVADA

---

| | |
|---|---|
| VMdirect, INC., a Nevada corporation, RAZOR STREAM, LLC, a Nevada limited liability company; Craig Ellins, an individual; Amy Black, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>Jim Tucker, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | **COMPLAINT**<br><br>CV-S-04-1754-KJD-LRL<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff VMdirect, Inc., a Nevada corporation  (hereinafter referred to as "Plaintiff" or "VMdirect") States as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the claims pursuant to its diversity jurisdiction, 28 U.S.C. §1332.  Plaintiff VMdirect, Inc. is a corporation incorporated under the laws of the State of Nevada, and having its principal place of business in the State of Nevada.  Defendant

Jim Tucker is a citizen of the State of Florida.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.       Venue is properly based in this district, pursuant to 28 U.S.C. §1391(b), as a substantial part of the events giving rise to the claims asserted herein arose in this district.

## THE PARTIES

3.       Plaintiff VMdirect, Inc. (hereinafter, "VMdirect") is, and at all relevant times herein was, a corporation organized and existing under the laws of the State of Nevada and duly authorized to conduct business and conducting business within the State of Nevada, with its principal place of business in the State of Nevada.

4.       Plaintiff Razor Stream LLC (hereinafter, "Razor Stream") is, and at all relevant times herein was, a limited liability company organized and existing under the laws of the State of Nevada and duly authorized to conduct business and conducting business within the State of Nevada, with its principal place of business in the State of Nevada.

5.       Plaintiff Craig Ellins is a resident of the State of Nevada and is over the age of eighteen (18) years.

6.       Plaintiff Amy Black is a resident of the State of Nevada and is over the age of eighteen (18) years.

7.       Plaintiffs are informed and believe and thereon allege that Defendant Jim Tucker ("Defendant" or "Tucker"), is an individual residing in the City of Clearwater, State of Florida. Defendant Tucker is a former Affiliate of Plaintiff, VMdirect.

8.       Plaintiffs are ignorant of the true names and capacities, whether individual, partnership, corporate, or otherwise, of Defendants sued as DOES 1-10, inclusive, and therefore, sues these Defendants by such fictitious names.  Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of these DOE Defendants when ascertained.

9.       Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendant was, in some manner, responsible for the occurrences herein alleged and the damages suffered by Plaintiffs, as alleged, were proximately caused by their conduct.

2

10.     Plaintiffs are informed and believe and thereon allege that each Defendant was, and is, the agent, servant, employee, partner, alter ego, and/or joint venturer of each other Defendant, and that Defendants maintain such unity of interest that separate personalities of each Defendant no longer exists, and that in doing the things alleged herein, each was acting in the scope of such agency, employment, partnership, and/or joint venture, and was acting as the alter ego of each other Defendant.

11.     The causes of action alleged herein arose, in part, and had effect in the County of Clark, State of Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12.     VMdirect and Razor Stream are Video Application Service Providers that provide high-quality streaming Videoemail and Video on Demand services. The company's core technology is comprised of a highly efficient Java-based streaming video player, and recorder. VMdirect and Razor Stream acquire their customers and distributes its products through a nationwide network of independent affiliates (hereinafter, "Affiliates"). Affiliates earn money by personally retailing products, acquiring new VMdirect distributors, and receiving overrides on their own referred network of distributors in a multi "tiered" or multi-leveled structure.

13.     Since its inception, VMdirect and Razor Stream have made a substantial investment in research and development, infrastructure, web site development, State of the art software and computer systems, marketing technology, and advertising.

14.     Pursuant to the Affiliate Agreement, individuals and/or entities, acting as independent contractor sales agents, contract with VMdirect for the right to sell VMdirect and Razor Stream's videomail products and services to the general public as well as the right to recruit and sponsor other individuals and/or entities as independent contractor sales agents and thereby build a downline sales organization. Such independent contractor sales agent is known as an "Affiliate".

15.     VMdirect provides promotional and training support to its Affiliates. VMdirect trains its Affiliates to both sell its products and to further develop the multiple levels of associates which is known as an Affiliate's downline. VMdirect is devoted to creating a strong

3

business opportunity for its Affiliates.  However, an Affiliate is an independent contractor and is personally responsible for his or her own business decisions and expenditures.

16.     An Affiliate is paid commissions based on the volume of sales generated by that Affiliate (personal volume) as well as the bonuses which are based on the volume of sales generated by Affiliates in his or her downline (business volume).

17.     An Affiliate may build a sales organization by sponsoring other individuals and/or entities as an Affiliate.   An Affiliate who sponsors other Affiliates is eligible to earn commissions on the volume of personal care products sold by the Affiliates he or she has recruited into their sales organization at VMdirect.

18.     Defendant Tucker became an Affiliate for VMdirect on or about June 30, 2003.

19.     In executing the Agreement, Defendant Tucker agreed that in the operation of their VMdirect businesses that he would adhere to VMdirect's Policies and Procedures, which were incorporated into and made a part of such Agreement.  Included in VMdirect's Policies are prohibitions against Affiliates engaging in unethical behavior.  The Affiliate Agreement makes it clear that an Affiliate must conduct himself/herself in an ethical manner.  VMdirect's Code of Ethics of the Policies reads in pertinent part as follows:

> "I will not make disparaging remarks about tohter products, services, Sales Affiliates, or companies; likewise, I will not willfully denigrate the activities or personalities of fellow Vmdirect Affiliate Network Sales Affiliates or corporate employees and individuals."

20.     Since Defendant Tucker became an Affiliate for VMdirect in June, 2003, Defendant solicited business entities who may be interested in VMdirect's products and services. Although it is an Affiliate's responsibility to close deals with his or her own customers, VMdirect has provided Defendant Tucker with substantial support to close the deals with his customers  However, despite such efforts, Defendant Tucker failed to close the deals with such customers.

21.     Thereafter, Defendant Tucker began accusing VMdirect, Razor Stream, its executive officers, Craig Ellins and Amy Black, of circumventing his customers to avoid a payment of sales commissions to Defendant Tucker.  Moreover, Defendant Tucker began stating

4

that VMdirect's system was not competent enough to support a corporate customer that he solicited and because of VMdirect's incapability, he lost various business opportunities.

22.     Defendant has engaged in such unethical, dishonest and unprofessional activity by aggressively disparaging the management and products of VMdirect as well as the company itself and making unlawful threats to Plaintiffs to expose inaccurate stories regarding VMdirect, Razor Stream and its executive officers, Plaintiffs Craig Ellins and Amy Black, to other Affiliates of VMdirect and the general public.

## FIRST CAUSE OF ACTION
## FOR EXTORTION

23     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 22 of this Complaint as though set forth in full hereat.

24.     N.R.S. 205.320, *et. seq.* makes extortion unlawful.

25.     Defendants committed unlawful extortion by threatening to expose Plaintiffs by disseminating inaccurate stories regarding Plaintiffs VMdirect, Razor Stream and its executive officers to the public through the media or press or to report such fictitious stories to governmental agencies unless Plaintiffs paid to them the sum of $21,194.

26.     As a direct and proximate result of the wrongful acts of Defendants, Plaintiffs have been generally damaged in the sum to be determined at trial.

27     The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## FOR TRADE LIBEL

28.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 27 of this Complaint as though set forth in full hereat.

29.     Defendant has printed, published, and circulated, or caused to be printed, published and circulated through an email or video mail, statements which disparaged VMdirect's business, products, and services to third parties resulting in pecuniary damage to VMdirect.

30.     The email or video mail was libelous on its face and it clearly exposes VMdirect to hatred, contempt, ridicule, and obloquy. The disparaging Statements made in the email by Defendant were intentional, false, misleading and malicious and include, among other things, the following:

> A.  That the principals of VMdirect are not trustworthy;
>
> B.  That VMdirect, Razor Stream, and its principals have stolen his customers and pocketed the profits;
>
> C.  That VMdirect's system was incompetent.

31.     The email or video mail was distributed to and read by many of VMdirect's Affiliates and customers.

32.     As a proximate result of the above-described publication, VMdirect has suffered loss of its reputation, shame, mortification, and hurt feelings all to its general damage in an amount to be determined at trial. Furthermore, VMdirect's relationship with a significant number of its customers and Affiliates has been disrupted to VMdirect's detriment.

33.     The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

## THIRD CAUSE OF ACTION
## FOR LIBEL

34.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 33 of this Complaint as though set forth in full hereat.

35.     In engaging in the conduct described more fully hereinabove, Defendant have intentionally published Statements that disparaged VMdirect's business, products, and services to third parties resulting in pecuniary damage to VMdirect.

36.     The disparaging Statements made by Defendant were intentional, false, misleading and malicious and include, among others, the following:

> A.  That the principals of VMdirect are not trustworthy;
>
> B.  That VMdirect, Razor Stream, and its principals have stolen his customers and pocketed the profits;

37.     As a direct and proximate result of Defendant' disparaging and false Statements, Plaintiffs' relationship with a significant number of Plaintiffs' customers and Affiliates have been disrupted to Plaintiffs' detriment.

38.     As a direct and proximate result of Defendant's actions, Plaintiffs have been injured in an amount to be determined at trial.

39.     The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION
### FOR INTERFERENCE WITH
### CONTRACTUAL RELATIONSHIP

40.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 39 of this Complaint as though set forth in full hereat.

41      Plaintiffs have had long standing relationships with its customers and Affiliates and have invested significant time, effort and money in developing those customers and Affiliates over a long period.

42.     Defendant knew of the existence of the contractual and economic relationships between Plaintiffs and its customers and Affiliates.

43.     Defendant wrongfully induced Plaintiffs' customers and Affiliates to disrupt or discontinue their relationships with Plaintiffs.

44.     As a direct and proximate result of Defendant's wrongful actions, Plaintiffs' customers and Affiliates have terminated their contractual relationships with Plaintiff, and Plaintiff's relationships with other customers and Affiliates have been disrupted, to Plaintiffs' detriment.

45.     As direct and proximate result of Defendant's wrongful actions, Plaintiffs have been injured in an amount to be determined at trial.

46      The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION
### FOR NEGLIGENT INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE

7

47.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 46 of this Complaint as though set forth in full hereat.

48.     Plaintiffs have invested significant time, efforts, and money into developing relationships with current and potential customers and Affiliates.  Economic relationships exist between Plaintiffs and their current and potential customers and Affiliates, containing a probable future economic benefit or advantage to Plaintiffs.

49.     Defendant knew and should have known of the existence of the economic relationships between Plaintiffs and their current customers and Affiliates. Further, Plaintiffs are informed and believe and thereon allege that Defendant and each of them, knew or should have known of the potential economic relationships between Plaintiffs and their customers and Affiliates.

50      Defendant wrongfully induced Plaintiffs' customers and Affiliates to disrupt or discontinue their relationships with Plaintiffs.

51.     It was reasonably foreseeable that Defendant's conduct as alleged hereinabove would interfere with or disrupt these economic relationships if Defendant failed to exercise due care.  Thus, Defendant, and each of them, knew or reasonably should have known, that their actions as alleged would interfere with and disrupt Plaintiffs' existing and potential economic relationships.

52.     As a direct and proximate result of Defendant's wrongful actions, Plaintiff's customers and Affiliates have terminated their contractual relationships with Plaintiff, and Plaintiff's relationships with other customers and Affiliates have been disrupted, to Plaintiff's detriment.

53.     As a direct and proximate result of Defendant' wrongful actions, Plaintiff has been injured in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## FOR INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

54.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 53 of this Complaint as though set forth in full hereat.

55.     Plaintiffs have invested significant time, efforts, and money into developing relationships with current and potential customers and Affiliates.  Economic relationships exist between Plaintiffs and their current and potential customers and Affiliates, containing a probable future economic benefit or advantage to Plaintiffs.

56.     Defendant knew of the existence of the economic relationships between Plaintiffs and their current and potential customers and Affiliates.

57.     Defendant wrongfully induced Plaintiffs' customers and Affiliates to disrupt or discontinue their relationships with Plaintiffs.

58.     As a direct and proximate result of Defendant's wrongful actions, Plaintiffs' customers and Affiliates have terminated their contractual relationships with Plaintiffs, and Plaintiffs' relationships with other customers and Affiliates have been disrupted, to Plaintiffs' detriment.

59.     As a direct and proximate result of Defendant's wrongful actions, Plaintiffs have been injured in an amount to be determined at trial.

60.     The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT

61.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 60 of this Complaint as though set forth in full hereat.

62.     On or about June 30, 2003, Plaintiff VMdirect and Defendant entered into an agreement that as an Affiliate of VMdirect Defendant Tucker would abide by the VMdirect Policies, including, but not limited to rules prohibiting Defendant from engaging in unethical and dishonest behavior, and from using the Affiliate lists and/or customers lists, for any purpose other than promoting VMdirect.

9

63.     Pursuant to the Affiliate Agreement, Defendant and at all times relevant herein was an Affiliates of VMdirect.

64.     Defendant has breached his Affiliate Agreement with Plaintiff VMdirect by unlawfully using VMdirect's Affiliate lists and customer lists to accomplish such goal, and by engaging in blatant, unethical, unprofessional and dishonest conduct in breaching all of his obligations under the Affiliate Agreement.

65.     VMdirect has performed all conditions, covenants, and obligations on its part to be performed under the terms of its various contracts with Defendant, and each of them, except those conditions, covenants and obligations the performance of which has been excused.

66.     As a result of Defendant's breach, VMdirect has been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## FOR BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

67.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 66 of this Complaint as though set forth in full hereat.

68.     Each and every contract contains an implied covenant of good faith and fair dealing by each party not to do anything which would injure the right of the other to receive the benefits of the contract or deprive the other party of the benefits of the contract.

69.     Plaintiff performed all the duties and obligations to be performed by them under the contract. Defendant intentionally failed to cooperate with VMdirect in their performance of their contract by making disparaging statements about the company, its principals and products, and wrongly using the Affiliate Lists and customer lists to interfere with Plaintiffs' relationships with its customers and Affiliates.

70.     Plaintiffs actually relied upon the promises of Defendant to perform the obligations of a VMdirect Affiliate as embodied in the Affiliate Agreement.

71.     Defendant has wilfully, knowingly, intentionally, and maliciously and with the intent to oppress VMdirect, materially breached the implied covenants of good faith and fair

dealing, depriving VMdirect from receiving the benefits of their agreement, as herein alleged and by reason which, VMdirect has been damaged in a sum which will be proven at the time of trial.

72.     The aforesaid acts of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

## NINTH CAUSE OF ACTION
## INJUNCTIVE RELIEF

73.     Plaintiffs reallege and hereby incorporate by reference paragraphs 1 through 72 of this Complaint as though set forth in full hereat.

74.     Defendant will continue to unfairly compete with Plaintiff and engage in various unlawful conduct unless enjoined, and Defendant's actions will continue to cause irreparable injury to Plaintiffs.

75.     Plaintiffs have no adequate remedy at law in the absence of injunctive relief, and the requested injunctive relief is necessary to protect the status quo pending further proceedings.

76.     Under the circumstances, Plaintiffs are entitled to preliminary and permanent injunctive relief, as well as damages caused by Defendant, and costs and attorneys' fees.

## REQUEST FOR RELIEF

Plaintiffs request for the following relief:

A.     For compensatory damages in the amount to be proven at trial;

B.     For attorney's fees and costs of this action;

C.     For exemplary and punitive damages in an amount to be determined at trial; and

D.     For such other and further relief as the court may deem proper and just.

Dated: December 21, 2004

By:

Attorneys for Plaintiffs
VMdirect, Inc., Razor Stream LLC,
Craig Ellins and Amy Black

11